FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 SEP 24 PM 4: 26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

PAUL SAPEU,

    Plaintiff,

v.                                        604CV129

JIMMY BLAND, ROBERT VILLEGAS, DR. ZELLNER YOUNG, DAWN SMITH, ERIC SMOKES, and DANE DASHER,

    Defendants.

## ORDER

This is a 42 U.S.C. § 1983 case in which inmate-plaintiff Paul Sapeu alleges, *inter alia*, Eighth Amendment violations against prison officials for their deliberate indifference to his serious medical needs. Doc. ## 1, 13, 16, 30. At trial, defendants Jimmy Bland, Dane Dasher, Eric Smokes, Dawn Smith, Dr. Zellner Young, and Robert Villegas moved for F.R.Civ.P. 50(a) judgment as a matter of law. This Order restates the Court's bench ruling in edited form.

At all times relevant, the plaintiff was in Georgia's Smith State Prison (SSP). Defendant Jimmy Bland was the K Unit manager and the disciplinary hearing officer for the facility. Defendant Dasher was an SSP captain and has since been transferred to the Georgia State Prison. Earlier in the trial, the Court directed a verdict on his behalf based on Sapeu's claim that Dasher deprived him of two meals -- something that simply does not rise to an Eighth Amendment violation. *See Green v. Hendrick Medical Center*, 2001 WL 300844 at * 3 (5th Cir. 2001) (unpublished).

What remains, then, are Sapeu's allegations that the other defendants were deliberately indifferent to his serious medical needs. In that respect, the trial evidence showed that defendant Smokes was, and is, an SSP lieutenant. Defendant Dawn Smith is a registered nurse and at all times relevant was employed as SSP's Director of Nursing.

Dr. Young is a medical doctor. He is an internist and cardiologist, and was the Medical Director at the prison. Finally, Defendant Villegas was a sergeant at the time in question.

The evidence shows that Sapeu was indeed housed in 2003 at the prison, in a segregated unit. Bland, as unit manager, was responsible for overseeing the functions of the unit, but did not participate in day-to-day issues that arose with individual inmates. Defendant Smokes has been a lieutenant for the past eight years or longer, and has a total of fifteen years of service with the Georgia Department of Corrections. As the testimony indicates, it is his responsibility to account for inmates and enforce departmental policies and procedures at the institution.

Nurse Smith is a registered nurse licensed by the State of Georgia. She served as SSP's Director of Nursing from August 1st, 2000 through this alleged incident and the plaintiff's stay at the prison. Her responsibility, according to her undisputed testimony, was as director and supervisor of nursing services, and she was the general director of the health service administrator and the medical director. Nurse Smith also directed the activities of the professional nursing personnel.

The defendant, officer Villegas, as noted, was a Sergeant at SSP. He was accountable for inmates and enforcing departmental policies and procedures. SSP logs show that it was highly,

highly unlikely, if not impossible, for him to have been at the prison facility on the day in question. His undisputed testimony shows no record of him at the prison then; in fact he was *en route* to, if not visiting, family in Arizona.

Sapeu alleges that he had an accident in the shower. He slipped or fell. He didn't like either word the Court suggested. He asserts that he simply bent over and that's when his back injury occurred. In any case he ended up, which the Court finds, with a back injury.

The question does arise whether or not and at what time medical help or attention was received by him. Whether it was one hour or three or four hours there is some debate. The plaintiff alleges that nurse Smith and Dr. Young refused to treat him or give him the necessary and required treatment and medication that he needed, and that they neglected him.

Plaintiff also claims that Lieutenant Smokes refused to take him to the medical services or medical department, and wouldn't furnish him a wheelchair, and he could not walk, therefore, he missed an appointment with the medical department and access to medical treatment for several days. Smokes also denied him a wheelchair, Sapeu further asserts, for going to what was at one time called an infirmary, and now is called an observation unit, where he could get and use a lower bunk, and save him, obviously, the need to climb a bunk because of his claimed back problems.

The institutional record indicates that Smokes wrote a statement in response to the plaintiff's grievance, and claims that he did not deny in any way his opportunity for sick call, but rather the inmate refused to attend the medical call when the lieutenant was sent to escort him.

Defendant Bland testified he has no knowledge of Sapeu being denied any medical care at the time in question, and in fact was in the building that day for a disciplinary hearing and he does not recall any encounter with the plaintiff. He was not aware of any serious injury to the inmate, nor did he deny the inmate any necessary medical attention.

Nurse Smith testified that it is the policy of the institution that if inmates are not cooperative and will not come to the facility then they are passed over, and might be rescheduled, as the Court understood, but that they are not forced to come to sick call.

Lieutenant Smokes testified that he went to Sapeu's cell and instructed him to get ready for sick call. Sapeu just stood there at the back of his cell, and said, "No, I'm not going." Sapeu says he was not able to go. He wanted a wheelchair. That was the testimony regarding a scheduled medical appointment for September 26, about ten days after the injury occurred.

The records do indicate that Smokes did notify a Nurse Kessler that Sapeu was refusing to come to medical. All of this is part of the medical records and exhibits.

There is no question that the plaintiff did complain of back pain and inability to be free of pain. Within a few hours, he was given muscle relaxants, Robaxin, and a pain reliever, Percogesic, and that other attempts were made to try to alleviate the pain.

The record further bears the testimony of Dr. Zellner Young, who the Court finds credible, totally believable and well-trained and had been practicing medicine in the area for well over thirty years in private practice and at the institution for some thirteen years. Dr. Young seemed to be a caring person. He was familiar with the complaints of back pain, and the

complaints of people in general, and he did not believe the plaintiff needed to be treated as an emergency case. But as he described it, he believed that conservative treatment should first be attempted. Eventually with the persistence of pain, he did recommend that the plaintiff see an orthopedist.

At some point, the plaintiff was transferred to Autry State Prison, Pelham, Georgia and received an MRI, which confirmed that he did have a slipped disk, herniated disk, and no doubt was suffering from pain.

There is also an allegation by Sapeu that the doctor missed and failed to diagnose a deep venous thrombosis of his left leg, and he claims that also was a constitutional deprivation of his rights.

Now, the Court is mindful that the plaintiff has the burden of proof by a preponderance of evidence. Normally it is a question for a jury to decide the credibility of witnesses. Plaintiff must prove the essential elements of the claim that he has brought; the first of which is that he had a very serious medical need as defined by the law. A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a lay person could easily recognize the necessity for prompt medical treatment.

To prove an Eighth Amendment violation, Sapeu must show deliberate or intentional indifference to his medical need on the part of the prison officials or any of the staff.

This is not a medical malpractice case, such as negligence or a lack of reasonable care on the part of an official charged with the custody and control of the defendant. It is not enough for the plaintiff to show he disagreed with the doctor's opinion as to the medical treatment prescribed. The plaintiff must prove deliberate and intentional conduct resulting in a deprivation of constitutional rights through the infliction of cruel and unusual punishment.

Resuming the essential elements of what must be proven by a preponderance of evidence is (1) that he had a serious medical need as defined by the law; (2) that the defendants were aware of the serious medical need; (3) that the defendants with deliberate indifference failed to provide the necessary medical care; and (4) the defendant's acts were the proximate or legal cause of the damages sustained by the plaintiff.

Back problems are one of the most prevalent complaints. No one should ever underestimate how painful and debilitating they are. In this case, though, the parties are talking about deliberate indifference. The record shows, and it is uncontradicted, that the plaintiff was seen 21 times for his condition in approximately four months after the alleged incident.

There is no allegation that any of the defendants, indeed the State or anyone else, participated in or caused the plaintiff injury. It was either an accident or it was failure of the body, just one of those things that happens with age.

The Court then must look at a back injury and what is reasonable under the circumstances. In this case, the doctor and medical staff believed that the plaintiff was a malingerer. The doctor testified to that. Notwithstanding that, a conservative treatment program was recommended and followed. When the Court says they thought he was a malingerer, the doctor and medical staff at least did not dispute that he was in pain, but they surmised that the pain was exaggerated. The doctor's testimony indicated what observations during examination confirmed his conclusion that there was an

3

exaggeration and that Sapeu was a malingerer. But, that is not for the Court to reconcile as a fact-finder.

The Court must continue to focus on a serious medical need and the denial of reasonable care, and deliberate and intentional conduct resulting in depriving Sapeu of his constitutional rights as has been explained and defined. He has not proven the essential elements of his case. Plaintiff received medical treatment on numerous occasions. While he may not have liked the course of treatment given, this is not a medical malpractice case and Sapeu admits he received treatment from Dr. Young. In fact, the Court does not see any basis, none whatsoever, that the plaintiff's constitutional rights have been violated in any manner set forth in the pleadings or by the evidence.

Sapeu, according to his own testimony, holds bachelor and master's degrees, and he is sophisticated beyond the level that most prisoners have. He has created a lot of paper. The Court's files are full of hundreds of letters and documents generated by him and the defense.

The issues have been explored. The Court feels that it would be an abrogation of its duty if it did not direct a verdict on the behalf of all of the defendants. The Court fears their time, the resources of the Court and all have been wasted, because under proper pleadings and timely responses by counsel for the defendants -- not those that are present -- this case would have never gotten this much attention or consumed this many resources of the state or the Federal Court.

To summarize, the oral motion of defendants Jimmy Bland, Dane Dasher, Eric Smokes, Dawn Smith, Dr. Zellner Young, and Robert Villegas for F.R.Civ.P. 50(a) judgment as a matter of law is **GRANTED**.

This 21 day of September, 2007.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA